**Leslie BERL and Frederick L. Anderson, Sr., Plaintiffs,**

v.

**COUNTY OF WESTCHESTER, Defendant.**

**No. 84 Civ. 8505 (LLS).**

United States District Court, S.D. New York.

Sept. 14, 1987.

Goodstein & West, New Rochelle, N.Y., for plaintiffs; Robert David Goodstein, of counsel.

Henry J. Logan, Westchester Co. Atty., White Plains, N.Y., for defendant; Peter J. Holmes, Sr. Asst. Co. Atty., of counsel.

### OPINION and ORDER

STANTON, District Judge.

Leslie Berl and Frederick L. Anderson, Sr., both male correction officers, bring this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983") against Westchester County ("County"), alleging that the County failed to promote them to sergeant because of their gender. Plaintiffs seek promotion to sergeant, back pay and benefits, attorney's fees, and compensatory damages.

By agreement of the parties, the trial of this action was submitted upon the joint pre-trial order and 41 stipulated exhibits.

### *Facts*

Plaintiffs Berl and Anderson are employed as correction officers at the Westchester correctional facility in Valhalla, New York, which is divided into Male and Female Units. Plaintiffs have received satisfactory job evaluations (Exhs. 6, 10, 11, 32) and have never been charged with disciplinary violations.

In April, 1980 plaintiffs took promotional Civil Service examination 70–338 ("70–338") for the position of correction-officer sergeant ("sergeant"). Each plaintiff passed the exam with a score of 86 and received an additional point for service longevity. Each plaintiff had a final score of 87, which was higher than any score received by a female correction officer, although some male officers received higher scores, thus deferring the time plaintiffs would be reached on the male list.

Westchester County used the 70–338 test scores to compile two Civil Service eligible lists for the position of sergeant. The lists were separated by gender—a list of male candidates, and a list of female candidates. Pursuant to N.Y.Civil Service Law § 60(2) the County limits positions involving the care of male inmates to men and those involving the care of female inmates to women. (Answer, Exh. C.) Thus, only those candidates on the female list were eligible for the position of sergeant in the Women's Unit. No males were considered for a sergeant's position in the Female Unit.

Pursuant to N.Y. Civil Service Law § 61(1) only those persons whose scores are among the top three (plus ties) remaining on the list at the time the promotion becomes available are eligible for promotion. It was not until May 21, 1984 that plaintiffs' names were "reachable" as among the top three male candidates then remaining on the list for sergeant. Three weeks earlier, each plaintiff had been interviewed by four members of the Promotion Board (Norwood E. Jackson, Warden; Frederick W. Kenney, Sr. Assistant Warden; John J. Maffucci, Commissioner; Joseph M. Stancari, Associate Warden). Plaintiffs "were not promoted as a result of those interviews." (Agreed Finding of Fact 30.)

Specifically, Berl was unanimously disapproved for a current promotion—"Career interest, somewhat reluctant to clearly explain position, I feel he's promotable but at later date. Promotable but deferred." (Jackson, Exhs. 31, 33); "Lacks direction & confidence. Did not present a forceful image regarding promotion to Sgt. Was not convincing.... Do not promote at this time." (Kenney, Exhs. 38, 40); *"good attitude*—has conceptual idea of what sgt. does & how to handle authority, etc. *not* forceful enough—re leadership role—promotable but not at this time." (Maffucci, Exhs. 12, 13) (italics in original); "Mature and responsible. Presents innovative ideas. Good candidate for future consideration—not projecting strong image at this time. Possibly result of medication and/or injury. Not convincing, not assertive. Not

recommended at this time." (Stancari, Exhs. 1, 2).

The Board members also unanimously rejected plaintiff Anderson for promotion "at this time" because of his questionable leadership abilities—"Understands job, but reluctant to assert himself ... Not a strong candidate but promotable. Promotable but defferred [sic]." (Jackson, Exhs. 31, 34); "Good officer but lacks take charge ability. Does not appear sure of himself. Needs greater confidence before consideration for promotion.... Do not promote." (Kenney, Exhs. 38, 39); *"good attitude*—good employee—11 years on job. Subject is *not* a take charge person—creates doubt as to leadership potential. *Promotable*—but not at this time." (Maffucci, Exhs. 12, 14) (italics in original); "Good correction officer, but seems middle of road. Not assertive—questionable abilities—follower. Possibly promotable but not strong candidate at this time. Not recommended." (Stancari, Exhs. 1, 3).

Apparently no sergeant positions were available in the Male Unit when plaintiffs became eligible for promotion on May 21, 1984. However, one sergeant position in the Female Unit was being filled by a temporary female appointee (Jean Mason) and another by a provisional female appointee (Esther Jones). Pursuant to N.Y. Civil Service Law § 65, Westchester County may make provisional appointments only when there is no appropriate eligible list available for filling a vacancy. Apparently, prior to these appointments, the female promotional list had been exhausted.

Plaintiffs remained among the top three candidates on the 70–338 list until a superseding list was established on October 23, 1984. The superseding list, 79–106, was based on the results of a more recent Civil Service exam, which plaintiffs took but on which their scores apparently did not place them among the top three.

Apparently no sergeant positions became available in the Male Unit during the five months which plaintiffs remained eligible for promotion based on the 70–338 list. However, apparently two new openings oc-

curred in the Female Unit and were filled by a temporary appointee (Deborah Johnson) and a provisional one (Marie Byrne).

Two months after the superseding list was established, a female correction officer (Barbara Gibson) received a temporary appointment to sergeant in the Female Unit.

### Discussion

#### A. Title VII Claim

Title VII prohibits discrimination in employment by making "[i]t . . . an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a). The statute forbids discrimination against either sex. *See Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385, 386–87 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971); *Torres v. Wisconsin*

*Dep't of Health & Social Services*, 639 F.Supp. 271, 277 (E.D.Wis.1986).

#### 1. Direct Evidence

In a Title VII disparate treatment case,[1] the plaintiff bears the burden of persuading the trier of fact that he or she has been the victim of intentional discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 256, 101 S.Ct. 1089, 1093, 1095, 67 L.Ed.2d 207 (1981). At the close of the evidence, the fact finder must decide whether the defendant intentionally discriminated against the plaintiff. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Here, plaintiffs rely upon defendant's policy against considering males as sergeants in the Female Unit to establish discriminatory treatment. When direct evidence of discrimination is available, problems of proof are the same as in any other civil case. *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 129–30 (3d Cir. 1985) (citing cases), *aff'd*, —— U.S. ——, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).[2] The County contends that the negative evaluations given plaintiffs caused their nonpromotions, rather than its policy against appointing males as sergeants in the Female Unit.[3]

Standing alone, in this case the policy does not establish that the County inten-

---

1. Generally, there are two types of cases under Title VII, "disparate treatment" cases and "disparate impact" cases. In the former, [the employer is accused of treating some people less favorably than others because of their race, color, religion, sex or national origin, and] the plaintiff must prove intentional discrimination. *Texas Dep't Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). In the latter, the plaintiff challenges "practices that are fair in form, but discriminatory in operation," *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971); the plaintiff need not prove intentional discrimination. *International Brotherhood of Teamsters v. United States*, 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15.
*Edwards v. Department of Corrections*, 615 F.Supp. 804, 806 n. 2 (M.D.Ala.1985).

2. Where a Title VII plaintiff presents direct evidence of discrimination, the *McDonnell Douglas* test and its shifting burdens are inapplicable. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985). "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'" *Ibid.*, quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir.1979).

3. Typically, Title VII is violated by a disparate treatment unless the sex discrimination is justified as in cases where a bona fide occupational qualification ("BFOQ") requires it. *See* A. Larson, Employment Discrimination, § 10.00 (1985). Here, defendant does not press a BFOQ defense. By stipulation, defendant withdrew the BFOQ defense raised in its answer.

tionally discriminated against plaintiffs in violation of Title VII because sergeant positions periodically were available in the Male Unit. Plaintiffs were interviewed and evaluated but not recommended for the Male Unit sergeantcies because of their then doubtful leadership abilities. Accordingly, defendant's policy alone does not prove that plaintiffs were the victims of intentional discrimination. *Contrast Garrett v. Okaloosa County*, 734 F.2d 621 (11th Cir.1984) (Title VII violation when defendant refused to consider female plaintiffs for position of correctional officer, jobs they were qualified to perform, and BFOQ defense rejected); *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079 (8th Cir.) (Title VII violation when defendant only promoted males to correction officer II status, no claim was made that the female plaintiff was unable to perform the required duties, except that she was female, and BFOQ defense rejected), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980); *Torres v. Wisconsin Dep't of Health & Human Services*, 639 F.Supp. 271 (E.D.Wis.1986) (Title VII violation when only females were eligible for sergeant CO–3 positions, male plaintiffs were demoted from that position, whose duties they were performing satisfactorily, and BFOQ defense rejected); *Edwards v. Dep't of Corrections*, 615 F.Supp. 804 (M.D.Ala.1985) (Title VII violation when male plaintiff would have been promoted, because of exemplary record, absent policy of promoting only females to shift commander, and BFOQ defense rejected). In this case the negative evaluations, together with defendant's policy, raise the problem of dual motivation.

## 2. Dual Motivation

Recently Judge Newman of this Circuit discussed the analysis of a dual-motivation situation—

> In most cases involving claims of discrimination, the issue of dual motivation does not arise.... Typically, the issue confronting the fact-finder at this last stage of the sequence is to determine which reason motivated the adverse action—the nondiscriminatory reason artic-

ulated by the employer or the discriminatory reason alleged by the employee. On occasion, however, the fact-finder might conclude that the employer was not motivated solely by either reason and that in truth both reasons "played a part" in the employer's decision.

In *Mt. Healthy [City School Dist. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)] the Supreme Court faced the dual motivation issue in the context of adverse employment action taken because of both a legitimate reason concerning deficient work performance and an illegitimate reason concerning exercise of free speech rights. The Supreme Court instructed that once the employee proves that the illegitimate reason played a part in the employer's motivation, the employer loses unless the employer can persuade the fact-finder that the adverse action would have been taken even in the absence of the illegitimate reason. Or, to put it another way, the employer can prevail by proving that the adverse action would have been taken if the legitimate reason alone had existed. Recently the Court has made it clear that the *Mt. Healthy* approach to dual motivation applies in the context of racial discrimination. *See Hunter v. Underwood*, 471 U.S. 222, 105 S.Ct. 1916, 1920, 85 L.Ed.2d 222 (1985).

Even before *Hunter* and *Mt. Healthy* the Court had indicated that a plaintiff does not win a Title VII suit simply by showing that race or other improper consideration was in the mind of the employer. Though the employee need not show that he would have been discharged solely on the basis of race, without regard to legitimate reasons, he must show "that race was a 'but for' cause." *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976).

.    .    .    .    .

... [I]t should be clear that a retaliatory motive or other impermissible discriminatory reason does not establish a Title VII violation unless it was causally related to the adverse action, not merely in the

mind of the employer. Showing that the impermissible factor was in the mind of the employer along with some legitimate reason only raises the dual motivation issue but does not resolve it. Of course, in many, perhaps most, cases, the existence of a retaliatory or other illegitimate motive will cast grave doubt on the plausibility of whatever legitimate motive the employer alleges motivated the adverse employment action.

*Davis v. State University of New York*, 802 F.2d 638, 644–45 (2d Cir.1986). *Accord Blalock v. Metal Trades, Inc.*, 775 F.2d 703 (6th Cir.1985); *Bell v. Birmingham Linen Serv.*, 715 F.2d 1552 (11th Cir.1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). *But cf. Bibbs v. Block*, 778 F.2d 1318, 1323–24 (8th Cir.1985) (*en banc*) (proof that discriminatory motive played some part in the decision establishes Title VII violation, and entitles plaintiff to relief; defendant's proof, that the adverse decision would have occurred even absent the discriminatory motive, serves only to limit the remedy granted).

Judge Newman also took note of the unresolved issue of burdens of proof—

In a case of dual motivation in the Title VII context, a question remains whether the burden is on the employer to prove that it would have taken the adverse action if only the legitimate reason had existed, as *Mt. Healthy* suggests in the First Amendment context, or on the employee to prove that the employer would not have taken the adverse action if only the legitimate reason had existed, as the *McDonald* footnote states concerning Title VII.

*Davis*, 802 F.2d at 645. Because a preponderance of the evidence [4] in this case shows that the County would not have promoted the plaintiffs even without the separate lists, the burden-of-proof issue need not be addressed.

---

**4.** Plaintiffs contend that defendant must show by clear and convincing evidence that plaintiffs would not have been promoted. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) specified the "preponderance of the evidence" standard once

**3. For A Legitimate Reason, Plaintiffs Would Not Have Been Promoted**

Under the New York Civil Service law, only those who score among the top three (plus ties) are eligible to be promoted. Plaintiffs were in that group on list 70–338 from May 21, 1984 until October 23, 1984, when a superseding list was established. The record shows that plaintiffs' names were "reachable" as among the top three male candidates only during that five-month period. Accordingly, only that period is relevant to plaintiffs' contention that when they were eligible for promotion, the County passed over them because of their gender, and appointed female applicants to positions of sergeant in the Female Unit.

The record does not show any openings for sergeant in the Male Unit during the five-month period when plaintiffs could have been chosen, although there were apparently four openings in the Female Unit. Those positions were filled either by provisional or by temporary female appointments. The record also shows that before the plaintiffs reached the top three positions on the list, the appointing authority (Mr. John Maffucci) and three other members of the Promotion Board had interviewed and disapproved them for the position of sergeant at that time, because of their deficient or undeveloped leadership qualities.

Section 61 of N.Y. Civil Service Law does not mandate selection of the highest individual on an eligible list, but rather permits selection of one of the top three (plus ties) persons on the list. Section 61

was designed to reflect the policy that factors aside from examination performance could be taken into account in making civil service appointments....

An individual's ability to achieve a high examination score does not necessarily demonstrate his capacity to perform the actual duties of a particular position. Moreover, examination success cannot

---

plaintiff had proven the adverse action was taken because of his free speech, and that standard is adopted here. *See Lee v. Russell County Board of Education*, 684 F.2d 769 (11th Cir. 1982). *See also, Bibbs*, 778 F.2d at 1324 n. 5.

reveal any possible defects of personality, character or disposition which may impair the performance of one's duties in a civil service position. (*See Chittenden v. Wurster*, 153 N.Y. 664, 47 N.E. 273.) Hence, of necessity, the appointing authority must be cloaked with the power to choose a qualified appointee who possesses all the attributes necessary for the responsible performance of his duties.

*Cassidy v. Municipal Civil Serv. Comm'n of the City of New Rochelle*, 37 N.Y.2d 526, 528–529, 375 N.Y.S.2d 300, 302 (1975).

Thus, the County's reason for not promoting plaintiffs to sergeant position because of weak leadership qualities was a legitimate one. Although during the five months when plaintiffs were eligible for promotion to sergeant[5] the only available positions were in the Female Unit, plaintiffs would not have been promoted even if the County promoted males to sergeant in the Female Unit.

Moreover, no females were permanently appointed to sergeant while plaintiffs were eligible for promotion. Sergeant positions in the Female Unit which became available during plaintiffs' five month eligibility period were filled by either temporary or provisional appointments. These appointments[6] do not change the conclusion reached above, because plaintiffs did not possess a vested right to a sergeant appointment simply because they were among the top three candidates on the eligible list. *See Serva v. Officer of Court Administration*, 92 A.D.2d 587, 588, 459 N.Y.S.2d 475, 477 (2d Dep't 1983); *Blake v. O'Connor*, 75

Misc.2d 135, 136, 346 N.Y.S.2d 935, 937 (1973). Thus, the County was not required pursuant to New York Civil Service Law to appoint plaintiffs to a sergeant position because they were on an eligible list.

## B. Section 1983 Claim

Under § 1983, plaintiffs claim that the defendant violated their Fourteenth Amendment equal protection rights. In this dual-motivation situation, plaintiffs must show that a sexually discriminatory purpose was a motivating factor in the County's decision. If the County then fails to carry the burden of establishing that the same decision would have been made absent the discriminatory motive, an equal protection violation is established. *Hervey v. City of Little Rock*, 787 F.2d 1223, 1233 (8th Cir.1986), *citing Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265–66, 270–71 n. 21, 97 S.Ct. 555, 563–64, 566 n. 21, 50 L.Ed.2d 450 (1977). For the reasons discussed above, the County has carried its burden, and accordingly the § 1983 claim is dismissed.

### Conclusion

The Clerk is directed to dismiss the complaint.

---

**5.** Plaintiffs also have presented evidence concerning the promotion to sergeant of a male officer who, like plaintiffs, was rated as nonpromotable when a candidate on the 70–338 list but who was promoted a year or more later. His promotion is irrelevant to plaintiffs' Title VII and § 1983 claims. He was on a later list, and was promoted to the male unit. During the interim, he may have been rated as promotable. Similarly, his disciplinary infractions may have been outweighed by his virtues. The reasons for his promotion are left to speculation.

**6.** Pursuant to section 65 of the N.Y. Civil Service Law, the appointing officer is authorized to make provisional appointments "[w]henever

there is no appropriate eligible list available for filling a vacancy in the competitive class...." A provisional appointment is a stop-gap or temporary appointment pending establishment of an adequate eligible list, and can not ripen into a permanent appointment. *See Halpin v. Reile*, 64 Misc.2d 1023, 1025, 316 N.Y.S.2d 819, 823 (1970); *Application of Gaiser*, 30 Misc.2d 619, 625, 211 N.Y.S.2d 337, 343 (1961), *aff'd*, 15 A.D.2d 793, 225, 225 N.Y.S.2d 494 (2d Dep't 1962). There were temporary appointments during the time when plaintiffs were eligible for promotion, but plaintiffs do not articulate an argument concerning these appointments based on New York Civil Service Law.