Linda M. FROST

v.

**CHROMALLOY AEROSPACE TECH-NOLOGY CORPORATION.**

**Civ. No. H–87–252 (PCD).**

United States District Court, D. Connecticut.

July 12, 1988.

Martin Wheeler, Kathleen Eldergill, Beck & Eldergill, Manchester, Conn., for plaintiff.

John L. Bonee III, Kenyon, Bonee & Greenspan, Hartford, Conn., James N. Foster, Jr., St. Louis, Mo., for defendant.

DORSEY, District Judge.

## I. *Facts and Procedural History*

Plaintiff began employment with defendant on February 2, 1982 as a secretary-receptionist. Complaint, ¶ 6. Over the next two years she assumed greater responsibilities until, in February of 1984, she became a purchasing agent. *Id.*, ¶¶ 7–8. Defendant's purchasing manager during this period was Thomas Bond. *Id.*, ¶ 7. Plaintiff claims she "was denied equal terms and conditions of employment, including but not limited to participation in a bonus pool for managers, participation in the Defendant's pension plan, and salary commensurate with job duties and responsibilities." *Id.*, ¶ 9.

In Count One, plaintiff claims that on March 11, 1984, in violation of 42 U.S.C. § 2000e *et seq.*, defendant terminated her employment because of her sex and in retaliation for her requests for a salary increase. Complaint, ¶ 12. At the time of her termination, plaintiff's salary was $15,-200 per year; her male replacement was paid $24,400. *Id.*, ¶¶ 13–14. Bond was paid $33,000 for his position, a position which plaintiff claims was substantially similar to her position. *Id.*, ¶ 15. Plaintiff alleges that defendant has maintained a pattern and practice of sex discrimination against employees as reflected in its treatment of her and other female employees.

In Count Two, plaintiff claims that the same conduct constitutes a violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and that such conduct was willful as known to be illegal or done in reckless disregard of that fact.

Plaintiff requests:
(1) an order (a) reinstating her with full seniority and salary including interim increments; (b) to pay her backpay; (c) that no information be disseminated about plaintiff except as relates to the quality of her work; (d) that defendant purge its personnel records of any information detrimental to plaintiff which is not based solely on the quality of her work;
(2) a declaratory judgment stating that the acts and practices of defendant are in violation of the laws of the United States; and
(3) damages, costs of suit, and attorney fees.

Defendant moves for summary judgment or, in the alternative, partial summary judgment with respect to plaintiff's claims of liability.

## II. *Discussion*

### A. Summary Judgment Standard

Fed.R.Civ.P. 56(c) provides, in part, that summary judgment shall be rendered only when a review of the entire record demonstrates "that there is no genuine issue as to any material fact." The burden falls on the moving party to establish that no relevant facts are in dispute. *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975); *accord Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 [, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142] ... (1970). Moreover, in

determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 [, 82 S.Ct. 993, 994, 8 L.Ed.2d 176] ... (1962) (*per curiam*); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). Therefore, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 313 (2d Cir.1981), *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 [, 106 S.Ct. 2505, 91 L.Ed.2d 202] ... (1986).

Properly employed, summary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570 [, 94 L.Ed.2d 762] ... (1987). It must, however, be used selectively to avoid trial by affidavit. *Judge v. Buffalo,* 524 F.2d 1321 (2d Cir.1975). Hence, the fundamental maxim remains that on a motion for summary judgment a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman,* 524 F.2d at 1319–20. As long as the plaintiff has adduced sufficient facts to substantiate the elements of his claim, summary judgment is inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317 [, 106 S.Ct. 2548, 91 L.Ed.2d 265] ... (1986).

*Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57–58 (2d Cir.1987).

B. Title VII [1]

Under Title VII, a

plaintiff has the burden of proving by a preponderance of the evidence a *prima*

facie case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie*, case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed. 2d 668 (1973).

To establish a *prima facie* case of sex discrimination, a plaintiff must show "(i) that she was a member of the protected class, (ii) that her job performance was satisfactory, (iii) that she was discharged and (iv) that after she was discharged, 'the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.'" *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985), quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. *See also Hagans v. Clark,* 752 F.2d 477, 481 (9th Cir.1985); *Berl v. Westchester County,* 669 F.Supp. 625, 628–29 (S.D.N.Y.1987). There appears to be no dispute but that plaintiff has satisfied elements one, two and four of the test. Plaintiff is clearly a member of a protected class, she received increases in her job responsibilities, reflecting satisfactory job performance, and her position was filled after she left by a man.

■ With regard to the third element of the *McDonnell* test, defendant claims that plaintiff voluntarily resigned; plaintiff claims she was constructively discharged.[2]

---

1. Plaintiff has argued that her claims under Title VII are not untimely. Defendant seems only to have made a timeliness argument in relation to plaintiff's second count. *See* Defendant's Memorandum at 21–23. Assuming that defendant has made such an argument, the Title VII claim is found not untimely inasmuch as the alleged discrimination continued until her resignation/discharge on March 11, 1986.

2. Plaintiff argues that the court is bound to accept the proposition that she was discharged because this was the conclusion reached by the State of Connecticut Employment Security Appeals Division. Plaintiff's Opposition Memorandum at 11–12, citing *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). "[W]hen a state agency 'acting in a

A finding of constructive discharge in violation of ... Title VII requires that the trier of fact " 'be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983) (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977)). The employer must have " 'deliberately [made] an employee's working conditions so intolerable' " as to force the resignation. *Id.* (quoting *Young v. Southwestern Saving and Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975)).

*Martin v. Citibank N.A.*, 762 F.2d 212, 221 (2d Cir.1985). *See also Cowan v. The Prudential Ins. Co. of America*, Civil No. B–81–511 (D.Conn. December 15, 1986) Memorandum of Decision at 28.

The intolerable conditions which plaintiff alleges support her claim of constructive discharge consist of the following: (1) she assumed the added responsibilities of the purchasing agent on the promise of future raises and benefits commensurate with that of her male counterparts but was denied such raises and benefits; (2) her superior, Bruce Johnson, thought of and treated her as a clerical worker; and (3) her performance appraisal was scheduled to be conducted by a recent transferee from defendant's office in Texas, Becky Messier. She also claims that she was forced to resign because defendant retaliated against her because of her frequent complaints regarding her salary.

■ Although factually subject to the challenge made in defendant's brief, it is apparent that, as a matter of law, plaintiff has not presented a genuine question of material fact as to the intolerability of her employment conditions. Plaintiff voluntarily accepted a promotion as purchasing agent knowing that she would not, at least initially, not receive a salary and benefits package commensurate with that of her male predecessor. No doubt she resigned because of her disappointment over not re-

---

judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts." *Elliott*, 106 S.Ct. at 3227. Thus, in reviewing the preclusive effect of a state agency's findings, the court must consider whether " '(1) the state agency was acting in a judicial capacity; (2) the disputed issues of fact were properly before the agency and the parties were given an adequate opportunity to litigate them; and (3) the courts of the particular state would give the agency's factfinding determinations preclusive effect.' " *Kennedy v. General Motors Corp.*, 664 F.Supp. 122, 125 (S.D.N.Y.1987), quoting *Kirkland v. City of Peekskill*, 651 F.Supp. 1225, 1229 (S.D.N.Y.1987). There is no dispute but that elements one and three have been satisfied. The decision of an Appeals Referee is appealable to the Board of Review ("Board"). Conn.Gen.Stat. § 31–249. That decision is then reviewable in the Superior Court and, ultimately, to the Connecticut Supreme Court. *Id.* at § 31–249b. When the Superior Court reviews the decision of the Board, it treats the latter as though it acted in a judicial capacity. The Superior Court " 'is bound by the findings of subordinate facts and reasonable factual conclusions made by the appeals referee where ... the [Board] ... adopt[s] the findings and affirm[s] the decision of the referee.' "

*Finkenstein v. Administrator*, 192 Conn. 104, 112–13, 470 A.2d 1196 (1984), quoting *DaSilva v. Administrator*, 175 Conn. 562, 564, 402 A.2d 755 (1978). " 'Conclusions of law reached by the referee cannot stand, however, if the court determines that they resulted from an incorrect application of the law to the facts found or could not reasonably and logically follow from such facts.' " *Id.* 192 Conn. at 113, 470 A.2d 1196, quoting *DaSilva*, 175 Conn. at 564, 402 A.2d 755.

Plaintiff has failed, however, to show that element two was satisfied inasmuch as the Appeals Referee's decision and the issues presented in this case are only remotely connected. The Appeals Referee decided that, for purposes of determining plaintiff's entitlement to unemployment compensation, she must be deemed to have been involuntarily terminated inasmuch as plaintiff was paid only two weeks of her offered notice of three weeks. *See* Decision of Appeals Referee at 3, citing *Mauvo v. Administrator*, 19 Conn.Supp. 362, 113 A.2d 866 (1954). The Appeals Referee did not consider the issue of plaintiff's claimed discharge as caused by discrimination, nor would such have been necessary with respect to the issues there presented. The Appeals Referee did not decide plaintiff's claims of constructive discharge in light of her claims under Title VII and her decision can, therefore, have no preclusive effect.

ceiving an allegedly promised salary increase and benefits package. However, "unequal pay alone does not constitute such an aggravated situation that a reasonable employee would be forced to resign." *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 66 (5th Cir.1980). *See also, Jett v. Dallas Independent School Dist.*, 798 F.2d 748, 755 (5th Cir.1986); *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir.1985), citing *Bourque*. Moreover, the fact that she was viewed simply as a clerical worker and the fact that she would be reviewed by someone who had not theretofore been involved in the operations of defendant's business in Connecticut, while perhaps upsetting, do not constitute intolerable conditions. The law does not provide a person with the right to a particular job status or label. *Jett*, 798 F.2d at 755; *Kelleher v. Flawn*, 761 F.2d 1079, 1086–87 (5th Cir. 1985); *Pena*, 702 F.2d at 324–26. Further, an employee's subjective opinion that she has not been treated in the manner in which she would like to be treated is not sufficient to support a finding of intolerable conditions. Moreover, there is no factual basis for finding that being evaluated by Messier would have been intolerable. Plaintiff's argument in relation to this claim is entirely based upon her subjective feeling that an evaluation by Messier implicitly meant that she would not be awarded the raises she had been promised. Plaintiff's Affidavit at 14. Viewed objectively, the circumstances of her employment cannot be found to have been of a nature as can be deemed so difficult, so unpleasant, so disagreeable, so aggravated to constitute an intolerable situation.

On March 7, 1986, plaintiff tendered what she herself deemed to be her letter of resignation. *See* Plaintiff's Exhibit A; Deposition of Plaintiff at 58 (August 18, 1987) (hereinafter TR 1). Plaintiff further admits that Johnson told her that he did not want her to leave and that he asked her to reconsider her decision over the ensuing weekend. TR 1 at 59, 60. On March 10, 1986, after the weekend, plaintiff again met with Johnson. He informed her that he could not give her a raise and that her next evaluation would be conducted by

Messier. *Id.* at 64–65. In response, plaintiff reiterated her desire to resign. *Id.* at 65. In short, the focus of plaintiff's complaint centers on her alleged receipt of a salary which was not consistent with that paid to her male counterparts. She also was disgruntled over the way the company was handling its restructuring. *Id.* While plaintiff may well have been upset and frustrated, she has not produced any evidence to suggest that a reasonable person would have considered such circumstances to have been so intolerable and to have been so deliberate on the part of her employer to constitute a constructive discharge. Indeed, a review of some of the case law indicates the weakness of plaintiff's claim. *Martin*, 762 F.2d at 215 (resignation due to humiliation and over burdensome work conditions did not constitute a constructive discharge); *Bourque*, 617 F.2d at 66 (resignation due to lower pay did not constitute a constructive discharge); *Muller v. United States Steel Corp.*, 509 F.2d 923, 929 (5th Cir.1975) (resignation due to unfavorable job assignment and failure to promote did not constitute a constructive discharge); *Lombardo v. Oppenheimer*, Civil No. H–85–781 (D.Conn. Feb. 23, 1987) Ruling on Motion for Summary Judgment at 5–11 (resignation due to reduction of job responsibilities did not constitute a constructive discharge).

## C.  Retaliation

■ Plaintiff also claims that her "dismissal was in retaliation for her insistence on receiving benefits and salary commensurate with her proven performance and responsibilities as Purchasing Agent which salary had been promised but denied her for two years." Plaintiff's Memorandum in Opposition at 16. She claims further that "[a]t a minimum, in the absence of any alternative explanation, one may reasonably infer that the termination of the Plaintiff was in retaliation for insistence upon equal pay for equal work." *Id.* at 17.

To make out a *prima facie* case of retaliation under Title VII, [a plaintiff] must show: protected participation or opposi-

tion under Title VII known by the alleged retaliator; an employment action disadvantaging the person engaged in the protected activity; and a causal connection between the protected activity and the disadvantageous employment action. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980). Proof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment, *Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir.1986), or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, *Simmons v. Camden County Board of Education*, 757 F.2d 1187, 1188–89 (11th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985), or *directly* through evidence or retaliatory animus directed against a plaintiff by the defendant. 3 A. Larson & L. Larson, *Employment Discrimination*, § 87.31 (1986 & Supp.1987); *see also Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F.Supp. 318, 328–29 (D.Mass.), *aff'd*, 545 F.2d 222 (1st Cir.1976). *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

▆ After her meeting with Johnson on March 10, 1986, plaintiff had allegedly become very emotional, disruptive, used derogatory language about the company and its management, and threatened various legal actions. Statement of Bruce Johnson before State of Connecticut Employment Security Division (April 3, 1986). Plaintiff claims that since the Appeals Referee found that plaintiff had not demonstrated willful misconduct, that this court should be bound by that same fact and therefore reach the conclusion that absent a finding of willful misconduct defendant's termination of her employment was in reality a retaliatory action taken because of plaintiff's insistence on equal pay for equal work. Even assuming that the court is bound by the Appeals Referee's decision, *see supra* note 2, plaintiff argument still

lacks merit. The Appeals Referee decided that for purposes of determining plaintiff's entitlement to unemployment compensation, she should not have been considered discharged for willful misconduct. She did not decide that plaintiff had not acted in the manner in which she was accused of acting nor that defendant's action was taken in retaliation for plaintiff's complaints of unequal pay. Plaintiff was an employee-at-will and could have been terminated for any reason. Whether she was entitled to unemployment compensation was a question which was not necessarily determinative of whether defendant's actions were retaliatory. Beyond her subjective feeling that her termination was retaliatory, Plaintiff's February 23, 1988 Affidavit, ¶ 4, plaintiff has produced no evidence to suggest that in concluding her employment defendant acted discriminatorily. Defendant could have fired her because she was disruptive, because it wanted only to pay her for two weeks rather than three, or because it was reorganizing its operations.

Plaintiff's attempt to infer a valid claim of retaliation from the Appeals Referee's decision, absent further proof, cannot survive defendant's motion for summary judgment. The only arguable protected activity which plaintiff participated in was her statement on March 7, 1986, that she thought it was discriminatory for her to receive almost one half of the salary that Bond was receiving. TR 1 at 105. *See Graham v. Texas Gulf Inc.*, 662 F.Supp. 1451, 1462 (D.Conn.1987) (Title VII protection extends to informal protests). However, during that same conversation with Johnson, plaintiff was also told, in no uncertain terms, that defendant did not want her to leave. TR 1 at 64–65. On March 10, 1986, she was given a further opportunity to withdraw her resignation although she declined to do so because defendant was unwilling to increase her salary. *Id.* On the following day she was fired allegedly because of the comments she had made to fellow employees on the previous day following her meeting with Johnson. Plaintiff has not rebutted these allegations. She further admits that but for the one conversation she had with Johnson on

March 7, 1986, that she never complained to any other employee, supervisor or manager that she thought she was being treated unfairly. TR 1 at 164. Thus, even assuming that her statement on March 7, 1986, was a protected activity, plaintiff has failed entirely to show any causal connection between that statement and her alleged discharge on March 11, 1986. Rather, the evidence suggests that defendant asked her to withdraw her application and took action only after she became disruptive on March 10, 1986. Plaintiff has failed to meet her burden on summary judgment in light of the standards enunciated in *De-Cintio*.

Accordingly, defendant's motion as to Count One is granted.

### D. Equal Pay Act[3]

"[T]o establish a prima facie case under the Equal Pay Act, a plaintiff must show (1) that his or her employer is subject to the Act; (2) that he or she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) that he or she was paid less than the employees of the opposite sex providing the basis of comparison."

Once the plaintiff shows that he or she is paid

less than an employee of the opposite sex for substantially equal work, the burden of proof "shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Corning Glass Works v. Brennan*, 417 U.S. [188], 196 [, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1] ... [(1974)]; *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir.1983). The Act provides one general and three specific exceptions for disparate wage

payments "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). These exceptions "are affirmative defenses on which the employer has the burden both of production and of persuasion." *Plemer*, 713 F.2d at 1136 (citing *Corning Glass Works*, 417 U.S. at 195–96 [, 94 S.Ct. at 2228–29].... 

*Peters v. City of Shreveport*, 818 F.2d 1148, 1153 (5th Cir.1987), *cert. dismissed*, —— U.S. ——, 108 S.Ct. 1101, 99 L.Ed.2d 264 (1988). *See also Marshall v. Building Maintenance Corp.*, 587 F.2d 567, 569 (2d Cir.1978); *Graham*, 662 F.Supp. at 1464.

In this case, without real dispute, plaintiff has met her burden with regard to elements one and three of the prima facie test. Defendant, however, vigorously disputes plaintiff's ability to satisfy element two. Defendant contends that Bond, the employee with whom plaintiff compares herself, was not a purchasing agent but a purchasing and equipment manager. In other words, it argues that Bond was not only plaintiff's supervisor, but was also responsible for many other duties which were in keeping with his superior skills.

"A showing of 'equal work' requires only that the plaintiff prove that the 'skill, effort and responsibility' required in the performance of the jobs compared are substantially equal." *Peters*, 818 F.2d at 1153. The skills of the individual employees are unimportant, only the skills of the job are relevant. *Goodrich v. International Brotherhood of Elec. Workers*, 815 F.2d 1519, 1524 (D.C.Cir.1987); *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251,

---

**3.** The Equal Pay Act bars any action not commenced within two years after the cause of action accrues, unless the employer's action is shown to be willful in which case the limitations period is three years. 29 U.S.C. § 255. Defendant argues that, because plaintiff admitted that her first claim of inequality in her pay began in February 1984, this suit is untimely. Defendant's argument ignores, however, the fact plaintiff alleges that she was promised that her salary would be made equal to that of her male counterparts. Plaintiff's Affidavit, ¶ 3 (Feb. 23, 1988). Thus, her claim did not arise until she

was told definitively on March 10, 1986, that she would not receive any further raises of any significant value. *Brewster v. Barnes*, 788 F.2d 985, 993 (4th Cir.1986) ("defendant's refusal to pay Brewster the same salary as that received by male correctional officers certified in 1975 constituted a continuing violation up to the last day of her employment"). In view of this holding, the court need not decide the issue of whether defendant's conduct was willful thus justifying the imposition of a three year statute of limitations.

1260 (7th Cir.1985). Moreover, "it is the job as a whole, not just selected aspects of it that must form the basis for comparison." *Id.* "[T]he extra duties used to distinguish two jobs may not be tasks that would typically be performed by personnel at lower pay." *Id.* *See also Marshal,* 587 F.2d at 569. "A female plaintiff does not have to show that her job is perfectly congruent with that of her male counterpart in order to succeed on a claim of sex-based wage discrimination under Title VII." *Marcoux v. State of Maine,* 797 F.2d 1100, 1107 (1st Cir.1986).

■ While defendant's citations to the record demonstrate weakness in plaintiff's case, plaintiff is found to have met her burden with regard to her Equal Pay Act claim. Plaintiff swears that in 1984 she assumed all the purchasing duties previously performed by Bond, Plaintiff's Affidavit, ¶¶ 7, 23 (Feb. 17, 1988), and that she worked in that capacity without supervision. *Id.,* ¶ 23. She further swears that she also had partial responsibility for supervision of two other employees. *Id.,* ¶ 19. Bond also swears that, as of February 1984, plaintiff assumed all of the purchasing functions he had previously performed or supervised in his role as purchasing and equipment manager. Bond's Affidavit, ¶¶ 13, 15 (Feb. 18, 1988). Based on these affidavits, there exists a genuine issue of material fact as to the second element of plaintiff's prima facie test. And, while defendant might be able to show a basis for the differential in its wage rate, such is not clear on the record.

Accordingly, defendant's motion for summary judgment as to Count Two is denied.

■ Defendant also moves for dismissal of plaintiff's claim for reinstatement because plaintiff has stated that she does not want to return to defendant's employ. TR 1 at 153. Plaintiff has not opposed the claim. Local Rule 9(a). Accordingly, plaintiff's claim for reinstatement is dismissed.

SO ORDERED.