**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CAVALIER OLDS, INC., Respondent.**

**No. 19642.**

United States Court of Appeals
Sixth Circuit.

Feb. 6, 1970.

James P. Hendricks, Atty., N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, John L. Taylor, Atty., N. L. R. B., Washington, D. C., on brief.

Edward C. Kaminski, Akron, Ohio, for respondent, Buckingham, Doolittle & Burroughs, Akron, Ohio, on brief.

Before EDWARDS, McCREE and COMBS, Circuit Judges.

PER CURIAM.

This case is before us on petition for enforcement of an order of the National Labor Relations Board reported at 172 NLRB No. 96. The Board found that respondent company violated Section 8 (a) (3) and (1) of the National Labor Relations Act, 29 U.S.C. § 158, by laying off and by constructively discharging certain employees; also that the company violated Section 8(a) (1) of the Act by harassing and interrogating employees.

In early 1967, the Professional Automobile Salesmen Association commenced a campaign to organize the salesmen of automobile dealers in the Akron, Ohio area, including those of respondent. By February, 1967, several of respondent's six salesmen had signed union authorization cards and a certification petition was filed by the union. On March 16, all of respondent's six salesmen went on strike. Four of the six returned to work on April 5 when the strike ended. At that time, the two junior salesmen, Mike Pace and Daniel Ellisin, were informed they were being laid off; the other two returning salesmen, James Pace and George Paul, were reinstated. Mike Pace was later recalled when George Paul was discharged but, on May 19, re-spondent's two remaining salesmen, Mike and James Pace, quit, contending that they had been constructively discharged.

The company directs its attack primarily at the Board's finding that it violated Section 8(a) (3) of the Act, insisting that the lay-offs on April 5 were the result of business conditions; also that the resignations on May 19 were voluntary acts by the employees, and that the adverse working conditions following the strike were due to the uncooperative and resentful attitude of the salesmen.

There is considerable testimony in the record about restrictive working conditions imposed on the employees when they returned to work following termination of the strike. For example, salaries were reduced; the salesmen were furnished used cars rather than new cars to drive; for the first time, the salesmen were required to punch a time clock and were read a list of rules; and their freedom was restricted in the handling of phone calls to and from customers. There is also testimony that management referred to the salesmen in derogatory terms; that, in response to complaints and inquiries as to when the harassment would cease, the salesmen were told they could quit if they did not like it and that they had not been told to go on strike; and that certain salesmen were questioned regarding union activities. The company president admittedly told the salesmen he felt they had stabbed him in the back.

Upon examination of the record as briefly summarized above, we are of the opinion there is substantial evidence to support the Board's findings that respondent violated Section 8(a) (1) by harassing and interrogating employees, and violated Section 8(a) (3) by laying off Ellisin and Mike Pace on April 5, and by constructively discharging James and Mike Pace on May 19. Although we might have reached a different conclusion had the matter been before us de novo, we are not at liberty to set aside the Board's choice between two conflicting views of the evidence. Bally Case &

Cooler, Inc. v. N. L. R. B., 416 F.2d 902 (6th Cir. 1969); N. L. R. B. v. Challenge-Cook Brothers, 374 F.2d 147 (6th Cir. 1967); N. L. R. B. v. Interurban Gas Corp., 317 F.2d 724 (6th Cir. 1963).

The Board's petition for enforcement is granted.