Claudette T. BOURQUE, Plaintiff-Appellant Cross Appellee,

v.

POWELL ELECTRICAL MANUFACTURING COMPANY, Defendant-Appellee Cross Appellant.

No. 78–1247.

United States Court of Appeals, Fifth Circuit.

May 5, 1980.

Rehearing Denied May 28, 1980.

---

Mandell & Wright, Eliot P. Tucker, Houston, Tex., for plaintiff-appellant cross appellee.

Baker & Botts, Richard R. Brann, Tony P. Rosenstein, Houston, Tex., for defendant-appellee cross appellant.

Before GOLDBERG, FRANK M. JOHNSON, Jr., and HATCHETT, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Claudette Bourque, the plaintiff here, began her employment with defendant Powell

Electrical Manufacturing Company in October, 1967. Except for two pregnancy leaves, Ms. Bourque was continuously employed by Powell until May of 1975. In February, 1975, she was promoted to a position as buyer in the purchasing department at Powell. She left defendant's employ ninety days later. Following her departure, Ms. Bourque filed a sex discrimination claim with the Equal Employment Opportunity Commission and the present litigation resulted.

■ The district court found that defendant Powell, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,[1] had discriminated against Ms. Bourque on the basis of her sex by failing to provide her equal pay for equal work. The court also found that plaintiff had voluntarily left defendant's employ and, accordingly, entered judgment for back pay covering the period of time Ms. Bourque had worked as a buyer. Both parties appeal. We affirm.

■ Powell urges that the court's finding of sexual discrimination be reversed but nevertheless concedes that factual findings must be reviewed under the clearly erroneous standard of Rule 52(a) of the Federal Rules of Civil Procedure. We believe that the court's subsidiary findings of fact and its ultimate determination of liability are amply supported by the evidence. See Burdine v. Texas Dep't of Community Affairs, 608 F.2d 563, 566 (5th Cir. 1979); Wade v. Mississippi Cooperative Extension Service,

528 F.2d 508, 516 (5th Cir. 1976); Causey v. Ford Motor Co., 516 F.2d 416, 420 (5th Cir. 1975). Plainly, these findings were not clearly erroneous.

Ms. Bourque began work in 1967 in Powell's purchasing department as a secretary-clerk. Over the years she served as the secretary for the head of the department, Mr. Jack Heidelberg, and after a time took on secretarial supervisory duties. During her last two years as a clerical worker Ms. Bourque also began to handle some of the functions performed by buyers and expeditors in the department and she even filled in for buyers during vacations and other absences. In February, 1975, an opening for a buyer in purchasing occurred because of the dismissal of one of the employees. Ms. Bourque was well aware of the work done by that person and she requested Mr. Heidelberg to recommend her to fill the job. Mr. Heidelberg agreed to do so.

At least with respect to Ms. Bourque, the hiring and salary decision fell to Tom Powell, vice-president of the company and at the time its head of production. Although there was no evidence that Mr. Powell was familiar with the work of Ms. Bourque, he expressed reluctance to hire her. Ultimately, however, he agreed to promote Ms. Bourque to fill the vacancy. At a meeting Ms. Bourque was informed she could have the job but Tom Powell told her that she would not receive the salary, $950 per month, earned by the employee who had been dismissed. Rather, Powell stated that she

1. Section 2000e–2(h), the equal pay provision of Title VII, Burdine v. Texas Dep't of Community Affairs, 608 F.2d 563, 569 (5th Cir. 1979), permits an "employer to differentiate upon the basis of sex in determining the amount of wages or compensation paid or to be paid to employees . . . if such differentiation is authorized by the provisions of section 206(d) of Title 29 [the Equal Pay Act of 1963]." 42 U.S.C. § 2000e–2(h).

The Equal Pay Act, in turn, provides in relevant part:

(d) Prohibition of sex discrimination

(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

would continue in the salary she had earned as a secretary, $675 per month.[2] Powell also stated that her position as a buyer was subject to a ninety-day trial period. Ms. Bourque responded that she needed some time to consider the offer.

A few days later plaintiff informed Powell that she would accept the position, at her secretarial salary, and she insisted upon a trial period. Ms. Bourque stated, however, that after ninety days her compensation would have to be raised to $850 per month; even that amount was $100 per month less than the amount paid to the person she had replaced. Thereafter Ms. Bourque moved into the office formerly held by the person she replaced and, according to the trial court, "assumed the title, position and duties of a buyer."

After ninety days in her new job Ms. Bourque's coworkers and supervisors were well pleased with her work. Nevertheless, although she received a wage increase to $719 per month, her compensation remained $130 per month below the $850 she had requested and far less than the salaries earned by male buyers. The receipt of this raise, considerably less than she had expected, precipitated her departure.

The district court extensively considered evidence of all of the responsibilities of Ms. Bourque and those of male buyers. *See Marshall v. Dallas Ind. School Dist.*, 605 F.2d 191, 194–95 (5th Cir. 1979). Sufficient evidence supports the court's finding that plaintiff's duties as a buyer were the same as or substantially similar to those performed by the person whom she replaced. The court also found her job equivalent to that of a male employee who became a buyer shortly before Ms. Bourque left. *See Burdine v. Texas Dep't of Community Affairs, supra,* 608 F.2d at 569; *Orr v. Frank MacNeill & Son, Inc.,* 511 F.2d 166, 171 (5th Cir.), *cert. denied,* 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975); *Brennan v. Prince William Hosp. Corp.,* 503 F.2d 282, 285 (4th Cir. 1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975).[3] Despite the equivalence of the positions, Ms. Bourque —even with her raise—was to receive more than $200 per month less than either of the males whose duties compared with hers. The trial court's findings were not clearly erroneous.

Ms. Bourque contends that the district court erred in finding her departure from Powell's employ to have been voluntary. She argues that she was constructively discharged from her position as buyer.[4] In applying the facts as found by the district court to the law of constructive discharge *see Young v. Southwestern Savings & Loan Ass'n,* 509 F.2d 140, 143 (5th Cir. 1975), we affirm the determination of the court below. As a matter of law the facts involved here do not constitute constructive discharge.

**2.** At trial plaintiff testified that Powell told her that:

"I will not pay a woman, any damned woman, the same money that I will pay a man for that position. I don't care. That's how I feel. I don't care if it leaves me open for a suit or not. Now you can have the position, but you will have it at the pay that you are presently making."

Although company witnesses disputed that evidence, Mr. Powell in his deposition admitted that he had discussed the matter with Mr. Heidelberg.

I believe that I mentioned to him in my opinion that somebody in a buying position has to be able to knuckle under a supplier or intimidate him. And I guess intimidate would be the word. And that I thought that on a one-to-one basis, a man would more readily knuckle under to another man than he would to a woman. I think that is our basic nature from years past. And that I thought a man would be—always would be better in that position than a woman.

**3.** Powell contended, essentially, that the job Ms. Bourque assumed had been downgraded after the male buyer was fired and was upgraded following her departure. Accordingly, Powell argues that her position cannot be appropriately compared to the jobs held by the males. The contention received no less credit by the district court than it deserved.

**4.** After Mr. Heidelberg notified plaintiff that she was to receive a raise to $719 per month, she gave two weeks' notice of her intent to resign. The company, however, preferred her resignation to be effective immediately. In the alternative, plaintiff contends that this constituted an actual discharge. The contention is without merit.

In *Young* this Court enunciated the standard for determining whether an employee has been constructively discharged.

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

509 F.2d at 144; *see Calcote v. Texas Educ. Foundation, Inc.*, 578 F.2d 95, 97 (5th Cir. 1978). Defendant urges, with some supporting authority, that in order to constitute a constructive discharge, the imposition of intolerable working conditions must be with the purpose of forcing the employee to resign. *See Muller v. United States Steel Corp.*, 509 F.2d 923, 929 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Padilla v. Stringer*, 395 F.Supp. 495, 504 (D.N.M.1974); B. Schlei & P. Grossman, Employment Discrimination Law 133 & n. 8 (1979 Supp.).[5] Nevertheless, such a rule is inconsistent with authority in this Circuit and, we believe, with the realities of modern employment.

Neither in *Young* nor in *Calcote* did this Court examine the facts under the stringent test that requires an employer's intent to rid itself of an employee. In neither case did the Court attempt to divine the state of mind of the employer. Rather, analysis proceeded upon an examination of the conditions imposed. *See Calcote, supra*, 578 F.2d at 97–98; *Young, supra*, 509 F.2d at 144. To find constructive discharge we believe that "the trier of fact must be satisfied that the . . . working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir. 1977).

Consideration of the question of constructive discharge from the perspective of a reasonable employee, however, does not aid plaintiff. Ms. Bourque voluntarily accepted a promotion at a rate of compensation she knew to be unequal to that earned by males holding the job. Further, she agreed to work for unequal pay and expected only that her compensation would be increased to a level she also knew to be unequal to that earned by male buyers. We have no question that her resignation resulted directly from her disappointment in not receiving the raise she had expected. We cannot fault her for that disappointment. Nevertheless, we cannot accept that under the circumstances presented here a reasonable employee would have felt compelled to resign. Moreover, we believe that discrimination manifesting itself in the form of unequal pay cannot, alone, be sufficient to support a finding of constructive discharge. *See Cullari v. East-West Gateway Coordinating Counsel*, 457 F.Supp. 335, 341 (E.D.Mo.1978).

Ms. Bourque urges that the working conditions she faced were no less objectionable than those faced by the plaintiff in *Young*. We disagree. In *Young*, we held that mandatory attendance at company prayer meetings imposed an intolerable working condition upon the plaintiff because attendance would have forced her to sacrifice her fundamental religious beliefs. While we by no means discount the discrimination Ms. Bourque may have faced, we simply do not believe that working for unequal pay under the circumstances presented here constitutes a condition of employment so intolerable that an employee is forced into involuntary resignation. The very fact that Ms. Bourque accepted the position under the conditions imposed belies such a contention.

Plaintiff admitted in brief and at oral argument that a cause of action existed from the moment she accepted the job at unequal compensation. She contends, however, that to require employees suffering

---

5. The facts of several cases in which courts found constructive discharge would meet this strict test. *See Jacobs v. Martin Sweets Co.*, 550 F.2d 364, 367–70 (6th Cir.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 52 L.Ed.2d 227 (1977); *J. P. Stevens & Co. v. NLRB*, 461 F.2d 490, 494–95 (4th Cir. 1972); *NLRB v. Cavalier Olds, Inc.*, 421 F.2d 1234, 1235 (6th Cir. 1970).

illegal discrimination to seek legal redress while remaining in their jobs would contravene the policies served by Title VII because then only "foolhardy" victims would seek relief from discrimination. We disagree. Title VII itself accords legal protection to employees who oppose unlawful discrimination. 42 U.S.C. § 2000e–3(a).[6] Moreover, we believe that society and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships.

██ Certainly unlawful discrimination in the form of unequal pay is relevant in any determination of whether constructive discharge has occurred. We recognized as much in Calcote. See 578 F.2d at 97. That case, however, presented continuing discrimination on the basis of race in the form of unequal pay and merit raises and racial harassment. See id. at 96–97.[7] We think that unequal pay alone does not constitute such an aggravated situation that a reasonable employee would be forced to resign. Unequal pay is not a sufficient justification to relieve Ms. Bourque of her duty to mitigate damages by remaining on the job. See Alicea Rosado supra, 562 F.2d at 119.[8]

AFFIRMED.

HATCHETT, Circuit Judge, dissenting.

I dissent because Powell Electrical constructively discharged Mrs. Bourque under this circuit's law of constructive discharge. Calcote v. Texas Educational Foundation, 578 F.2d 95 (1978); Young v. Southwestern Savings & Loan Association, 509 F.2d 140 (1975). Mrs. Bourque's case is one "in which an employee involuntarily resigns in order to escape intolerable and illegal employment requirements." Young at 144. She has a statutory entitlement to equal pay under Title VII. Her employer denied her this right.

This particular violation of Title VII did not, by itself, make Mrs. Bourque's working conditions so intolerable as to force her into an involuntary resignation. She also endured Mr. Powell's discriminatory statements and his aversion to her promotion to buyer, a job for which she fully qualified. Mr. Powell approved her promotion only after imposing upon her conditions which were not inflicted upon male buyers: a three-month trial period*; a salary $275 per month lower than her male counterparts; and time clock check-in. Further, upon successful completion of the trial period, even with a raise, Mrs. Bourque's salary still was over $200 less than either of the males whose duties compared with hers.

These actions are sufficient to constitute working conditions so intolerable as to

---

**6.** (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. 2000e–3(a).

**7.** Plaintiff submits that she did endure indignities beyond that of receiving unequal pay. Ms. Bourque was required to punch a time clock even though male buyers were not. We think this insignificant and, at any rate, easily explained by her employer's belief that she was not exempt from overtime pay requirements. Similarly, she argues that her ninety-day trial period should be considered in an analysis of whether she was constructively discharged.

Initially, we note that Ms. Bourque insisted on the trial period. Moreover, the evidence does not suggest that the fact of her trial period played any role in her decision to resign.

**8.** Plaintiff also contends that even if she was not constructively discharged, the proper measure of damages would be the difference between the rate at which she was compensated and the rate at which male buyers were paid and that the back pay period should have continued until she obtained permanent employment. We find no error in the trial court's decision to limit damages to the period Ms. Bourque was employed by defendant as a buyer. See Muller, supra, 509 F.2d at 930; Schlei & Grossman, supra, at 1240 & n. 23 (1976).

* Though Mrs. Bourque subsequently desired a three-month trial period, Mr. Powell originally created the trial period as a condition precedent to her promotion to buyer.

make Mrs. Bourque's involuntary resignation a constructive discharge. I do not suggest that any single statutory violation by an employer will necessarily support a finding of constructive discharge, if the employee-discriminatee subsequently resigns. Whether the circumstances warrant a finding of constructive discharge should be determined on a case-by-case basis. Here, the circumstances warrant such a finding.