Blanche N. PRINCE, Plaintiff,

v.

COMMISSIONER, UNITED STATES IM-
MIGRATION AND NATURALIZATION
SERVICE, et al., Defendants.

Civ. A. No. 83–CV–71022–DT.

United States District Court,
E.D. Michigan, S.D.

April 13, 1989.

986

George Leiken, Southfield, Mich., for plaintiff.

Karl Overman, Asst. U.S. Atty., Detroit, Mich., Linda Selbst, Southfield, Mich., for defendants.

### MEMORANDUM OPINION AND ORDER

JULIAN ABELE COOK, Jr., District Judge.

This is a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The Plaintiff, Blanche N. Prince of Detroit, Michigan, is a former employee of the United States Immigration and Naturalization Service (INS) at the Port of Detroit. Prince alleges that due to age, race and sex discrimination by the INS, she was (a) repeatedly denied promotions within the agency between 1970 and 1978, (b) promoted to the position of Immigration Inspector in 1978 only to be terminated therefrom in 1979 without proper training and evaluation, and (c) reinstated by the INS in 1983 pursuant to a finding of discrimination by the United States Equal Employment Opportunity Commission (EEOC), but forced to retire prema-

turely from her position in 1984 because she was unwilling to undergo retraining.

The original Complaint in this cause, which was filed on March 21, 1983, cited the failure of the EEOC to make Prince whole pursuant to its finding of discrimination. On June 28, 1985, her Complaint was amended to include an allegation of "forced retirement" subsequent to the filing of the original Complaint.[1]

As amended, Prince requests two separate species of relief beyond the redress which was afforded to her by the decision of the EEOC in 1983. First, she seeks back pay for a two-year period prior to the filing of her initial charge of discrimination with the EEOC as a remedy for the continuous discriminatory acts which were allegedly directed against her between 1969 and 1979. Second, Prince also seeks reimbursement of those monies that she would have earned between 1984 and 1988 (including the value of those promotions that would have been received).

On July 18, 1986, this Court denied the INS' motion for a summary judgment upon the amended Complaint pursuant to *Fed.R. Civ.P.* 56. A trial was conducted before this Court, sitting without a jury, between June 13, 1988 and June 20, 1988. The Court now enters its findings of fact and conclusions of law pursuant to *Fed.R. Civ.P.* 52(a).

## I

### A

The record reflects that Prince filed her administrative complaint on November 2, 1979. Following an informal inquiry in which the INS found that no discrimination had been visited upon Prince, she requested and received a formal hearing before an EEOC hearing examiner on February 26, 1982. The EEOC hearing examiner issued a Recommended Decision on December 30, 1982, in which he concluded that Prince had suffered discrimination because of her race and sex. The Recommended Decision was adopted by the INS on February 15, 1983.

Thereafter, dissatisfied with the extent of the remedy that had been afforded to her, Prince (a) lodged an administrative appeal with the EEOC Office of Review and Appeals on March 3, 1983, and (b) filed her Complaint in the instant federal civil action on March 21, 1983. On August 31, 1983, the EEOC Office of Review and Appeals issued a decision in which it concluded that the hearing examiner had improperly failed to award Prince (a) a retroactive increase in pay grade, and (b) an appropriate back pay and benefits on the basis of her contention that she would have advanced in grade and salary level in the absence of the wrongful termination.[2]

The preceding chronology of events presents a difficult threshold question for the Court, i.e., whether Prince exhausted her administrative remedies under section 717(c) of Title VII, 42 U.S.C. § 2000e–16(c), prior to the commencement of the instant lawsuit.

Section 717(c) of Title VII provides, in pertinent part:

> Within thirty days of receipt of notice of final action taken by a [federal executive] agency ..., or by the [EEOC] upon an appeal from a decision or order of such ... agency ... on a complaint of discrimination based on race, color, religion, sex or national origin, ... an employee or applicant for employment, if aggrieved by the final disposition of his complaint, ... may file a civil action...

42 U.S.C. § 2000e–16(c).

In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court held that "section 717 [of Title VII] does not contemplate merely judicial relief. Rather, it provides for a careful blend of administrative and judicial enforcement powers." *Id.* at 833, 96 S.Ct. at 1968.

Section 717(c) permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination. Attached to

---

**1.** First Amended and Supplemental Complaint, July 2, 1985; *see* n. 21 *infra*.

**2.** Decision, EEOC Office of Review and Appeals, August 31, 1983, Defendant's Exhibit 2, at 3.

that right, however, are certain preconditions. Initially, the complainant must seek relief in the agency that has allegedly discriminated against him. He then may seek further administrative review with the Civil Service Commission, or, *alternatively*, he may, within 30 days of receipt of notice of the agency's final decision, file suit in federal district court without appealing to the Civil Service Commission. If he does appeal to the Commission, he may file suit within 30 days of the Commission's final decision.

*Id.* at 832, 96 S.Ct. at 1967 (emphasis added).[3]

▬ The clear import of *Brown* is that a complainant may not pursue administrative and judicial remedies simultaneously, but must choose between them even at a point in the administrative process where Title VII would ordinarily allow the commencement of litigation. Such a restriction comports with the federal policy which generally underlies the exhaustion doctrine, i.e., the avoidance of inconsistencies between administrative and judicial decisions in connection with the same dispute. Thus, once Prince elected to pursue an appeal with the EEOC Office of Review and Appeals, she would have been precluded from filing suit in this Court until that phase of the administrative review had been completed.[4]

However, although district courts are empowered by *Fed.R.Civ.P.* 12(h)(3) to dismiss *sua sponte* a civil action at any time in which subject-matter jurisdiction appears to be lacking, *see e.g., Casio, Inc. v. S.M. & R. Co.,* 755 F.2d 528, 529 (7th Cir.1985), this Court determines that it must overlook the apparent failure of Prince to conclude her administrative appeal prior to the filing of the instant lawsuit for several reasons.

▬ First, although exhaustion is ordinarily a prerequisite to suit under Title VII, *see Sampson v. Civiletti,* 632 F.2d 860 (10th Cir.1980), it, like timeliness, is not a threshold jurisdictional requirement and may be viewed with discretion by the district court. *Goza v. Bolger,* 538 F.Supp. 1012 (N.D.Ga.1982), *aff'd,* 741 F.2d 1383 (11th Cir.1984); *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 589 (5th Cir.1981) (*en banc*); *Citicorp Person-to Person Financial Corp. v. Brazell,* 658 F.2d 232, 234 (4th Cir.1981). In *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Court "honor[ed] the remedial purpose" of Title VII by holding that the timely filing of a complaint with the EEOC was "not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires." *Id.* at 398, 102 S.Ct. at 1135. This Circuit has viewed the exhaustion re-

3. The administrative review functions of the Civil Service Commission with regard to discrimination claims by federal employees prior to 1978 were transferred to the EEOC by Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19807, 92 Stat. 3781 (1978), *set out as note* at 42 U.S.C. § 2000e–4. Thus, the review which Prince sought in the instant case through the EEOC Office of Review and Appeals was the statutory and functional equivalent of the Civil Service Commission review which was referred to in *Brown v. General Services Administration, supra.*

4. It has been held that there is "no election of remedies doctrine in Title VII cases; a plaintiff may seek to vindicate his rights before as many bodies as have jurisdiction to help him." *Ortega v. Construction and General Laborers' Local 390,* 396 F.Supp. 976, 980 (D.Conn.1975). The pursuit of a federal civil action under Title VII does not require that a complainant forgo a remedy under other federal or state statutes. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Voutsis v. Union*

Carbide Corp., 452 F.2d 889 (2d Cir.1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972).

However, the election doctrine refers to a choice of remedies under more than one statute. *See* B. Schlei & P. Grossman, Employment Discrimination Law 1073–74 (2d ed. 1983). No meaningful distinction exists between exhaustion and election where the complainant's "choice" is between administrative and judicial remedies under Title VII. The exhaustion of administrative remedies (although it is not necessarily a jurisdictional requirement) is ordinarily a prerequisite to suit under this statute. *Goza v. Bolger,* 538 F.Supp. 1012 (N.D.Ga.1982), *aff'd,* 741 F.2d 1383 (11th Cir.1984) (further discussed *infra*). Thus, to accord due deference to the exhaustion doctrine which was articulated in *Brown v. General Services Administration, supra,* does not inject an otherwise nonexistent election of remedies requirement into Title VII law.

quirement with similar latitude. *See, e.g., Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614, 620 (6th Cir.1983); *see also, Stache v. International Union of Bricklayers and Allied Craftsmen*, 852 F.2d 1231, 1234 (9th Cir.1988).

Second, at no time during the protracted course of this litigation did the INS object to Prince proceeding in this fashion, although it was well aware of the initiation and subsequent conclusion of her administrative appeal.[5] On several occasions prior to the commencement of the trial in this matter, the INS argued that Prince had no legitimate dispute since the agency had provided her with all of the relief that had been ordered as a result of the EEOC appeal.[6] Thus, to the extent that a defendant in a Title VII action may waive its exhaustion defense under *Zipes v. Trans World Airlines, Inc., supra*, this Court concludes that the INS waived such a defense in this cause.

Finally, Prince (a) derived no discernible benefit from the brief overlapping of the two actions, and (b) would now have no further administrative recourse since the EEOC resolved her final administrative appeal on August 31, 1983. Indeed, because of her claimed dissatisfaction with the relief which had been afforded to her by the EEOC Office of Review and Appeals, it may reasonably be inferred that she would ultimately have filed the instant civil action and raised the same issues which are now before this Court. Hence, Prince's failure to exhaust her administrative remedies or to pursue her administrative and judicial remedies *seriatim* rather than simultaneously must now be regarded as moot.

For these reasons, the important federal policies which favor exhaustion within the Title VII context would not be disserved by retaining jurisdiction of this case. *Brown v. General Services Administration*, 425 U.S. at 833, 96 S.Ct. at 1968; *Edwards v. Department of the Army*, 708 F.2d 1344, 1347 (8th Cir.1983) (crucial purpose of exhaustion requirement is to give the agency an opportunity to "develop a record [and] exercise its discretion, to apply its own expertise and, possibly, to discover and correct its own errors.)" Accordingly, any procedural defects that may have surfaced in Prince's simultaneous pursuit of an administrative appeal and a federal civil action during a brief period in 1983 will be disregarded by this Court.

## B

In his Recommended Decision of December 30, 1982, the EEOC Hearing Examiner determined that Prince should be (1) reinstated to her position as an Immigration Inspector and (2) awarded back wages for the period of her discharge.[7] However, in the instant suit, Prince requests an award of back wages for a period beginning two years before the filing of her EEOC claim on November 2, 1979, contending that her

---

**5.** *See, e.g.,* Decision, EEOC Office of Review and Appeals, October 31, 1983, Defendant's Exhibit 2; Defendant's Memorandum in Support of Objections to Magistrate's Order on Motion to Compel Discovery, April 30, 1984, at 2 ("[t]he administrative determination was that the plaintiff was discriminated against for racial and sexual reasons when she was demoted. The INS could have chosen to contest this finding but on August 31, 1983 [sic] it chose to avoid further litigation on the issue and agreed to reinstate [Prince] to the position of immigration inspector").

**6.** *See* Affidavit of Andrew J. Belanger, April 25, 1984, Exhibit A to Defendant's Objections to Magistrate's Order, April 30, 1984, at 2, paragraphs 7–10 ("[O]n February 15, 1983, the Department of Justice Complaint Adjudication Officer accepted the recommendation that the complainant be reinstated ... [P]ursuant to an

Order of the Equal Opportunity Commission, dated August 31, 1983, the [INS] reinstated [Prince] to the position of Immigration Inspector, training program ... [I]n accordance with the above referenced Order, [Prince] was paid the sum of $43,781.74 ... [T]his sum ... was paid to [Prince] by check dated February 24, 1984 by the Department of Justice").

**7.** On August 31, 1983, the EEOC Office of Review and Appeals granted Prince retroactive promotion to Grade 9, Step 2, of the General Schedule for federal employees. Decision, EEOC Office of Review and Appeals, August 31, 1983, Defendant's Exhibit 2, at 2–3. The Office of Review and Appeals determined that the INS had "failed to meet its burden" under *Day v. Mathews*, 530 F.2d 1083, 1085 (D.C.Cir.1976), to prove by clear and convincing evidence that Prince would not have been promoted even if she had been retained. Decision, *supra*, at 3.

discharge was a part of a continuing course of discriminatory conduct by the INS which began many years before she was selected as an Immigration Inspector Trainee.

Under sections 717(d) and 706(g) of Title VII, 42 U.S.C. §§ 2000e–16(d), 2000e–5(g), a federal employee may recover compensation for a period of "continuing discrimination" if (a) the alleged mistreatment is proven to have been continuous, and (b) the latest act which manifested the continuing discrimination fell within the 30–day limitations period for the filing of an administrative complaint under section 717(c) of Title VII, 42 U.S.C. § 2000e–16(c). *Thompson v. Sawyer,* 678 F.2d 257, 289 (D.C.Cir.1982), *citing United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Roberts v. North American Rockwell Corp.,* 650 F.2d 823, 828 (6th Cir.1981); *Wilkins v. Walters,* 571 F.Supp. 474, 476 (N.D.Ohio 1983).

■ Title VII limits an award of back pay to "a date [not] more than two years prior to the filing of the charge" regardless of the duration of the alleged continuing discrimination. 42 U.S.C. § 2000e5(g); *Spears v. Pike County Board of Education,* 843 F.2d 882 (6th Cir.1988). However, "make-whole" relief for the statutory two-year pre-filing period includes the value of enhanced income which would have been derived by the claimant during that period but for the lingering effects of prior acts of discrimination. *Berry v. Louisiana State University,* 715 F.2d 971, 980; *Laf-* *fey v. Northwest Airlines, Inc.,* 567 F.2d 429, 472 (D.C.Cir.1976).

At the trial of the instant cause, Prince presented evidence that race, sex and/or age discrimination had motivated several decisions by the INS to deny promotional opportunities to her beginning in 1970. Prince also established that she had presented such evidence to the EEOC during its investigation of her case.[8]

■ After a review of the record, this Court determines that the EEOC Hearing Examiner was presented with sufficient evidence upon which to base a conclusion that Prince had suffered from a continuing pattern of race and sex discrimination by the INS for more than two years before she filed her administrative complaint. Because the EEOC had notice of Prince's claim that her 1979 termination was a part of a continuing course of discrimination by the INS, it cannot be said that Prince failed to exhaust her administrative remedies with respect to this issue.[9]

## II

### A

■ Federal employees are entitled to the same *de novo* review of their Title VII administrative claims in federal district courts as are private sector employees. *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Therefore, in evaluating the merits of Prince's

---

8. *See* Transcript of EEOC Hearing, February 26, 1982 (Plaintiff's Exhibit O), at 14–16, 63–64.

9. The Court notes that the EEOC hearing examiner explicitly limited the hearing to Prince's 1979 termination. The examiner did not clarify the basis for his framing the case as he did, and accepted testimony into the record concerning Prince's claims of earlier discrimination although he had specifically admonished the parties that irrelevant testimony would not be permitted. Transcript of EEOC Hearing, *supra,* n. 6, at 4.

It is not apparent from the record that the EEOC Office of Review and Appeals was expressly petitioned to expand the scope of relief to redress acts of discrimination extending two years or more before the filing of Prince's complaint. Prince has not placed upon the trial record any evidence that she specifically asked the Office of Review and Appeals for such relief.

The EEOC decision on appeal stated simply, "This appeal concerns the remedy awarded to appellant after a finding of discrimination. Appellant contends that she ... has not been made whole, i.e., retroactive promotion to GS–9, step 2." Decision, *supra,* n. 5, at 2. The decision concluded, "[We] affirm the agency's decision insofar as it found that appellant's *termination from the training program* was discriminatory." *Id.* at 3 (emphasis added).

However, regardless of the degree of understanding which Prince possessed concerning the complexities of the administrative and judicial review process, this Court may consider allegations in her civil action which are "like or reasonably related to the administrative charges that were timely brought." *Anderson v. Block,* 807 F.2d 145, 148 (8th Cir.1986) (further discussed *infra*). *See* n. 10 *infra.*

claims, this Court is not limited to a review of the EEOC decision, but may conduct an independent assessment of the record which was compiled at the trial of the instant civil action.[10]

Under *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n. 13, 93 S.Ct. 1817, 1824 & n. 13, 36 L.Ed.2d 668 (1973), the plaintiff in a Title VII action must make a *prima facie* showing of discrimination. Here, Prince may meet her initial burden by showing that (a) she was a member of a protected group, (b) she applied and was qualified for the positions for which the employer was seeking applicants, (c) despite her qualifications, she was rejected, and (d) after her rejection, the employer continued to seek applicants from persons with substantially similar qualifications. *Id.*

■ With regard to her claim of continuing discrimination, Prince must (a) meet the *prima facie* burden, as specified in *McDonnell Douglas v. Green, supra*, with regard to each of the predicate acts which allegedly form the pattern of unlawful behavior by the INS, and (b) demonstrate an interrelationship among those acts without which the claimed discrimination could not be called "continuing." *See Thompson v.* *Sawyer*, 678 F.2d at 291; *Spears v. Pike County Board of Education*, 843 F.2d 882 (6th Cir.1988).

■ Prince presented unrebutted evidence that she had applied for at least ten positions within the INS between 1970 and 1978, and each time had been rejected in favor of other applicants. Three of her applications were for Immigration Inspector posts.[11] Furthermore, several of Prince's applications included contemporaneous evaluations from her supervisors who gave her high ratings with regard to competence, performance, and suitability for promotion.[12] Thus, Prince has satisfied her *prima facie* burden under *McDonnell Douglas Corp. v. Green, supra*, with regard to each of the job applications that were admitted into evidence at trial.

■ In response to Prince's continuing discrimination claim, the INS asserted that the agency's official records concerning any denials of promotion to Prince prior to 1978 had been destroyed pursuant to those General Services Administration regulations which govern the retention of personnel-related documents within the federal executive branch.[13] The INS maintained that it could not defend against Prince's continuing discrimination allegation without access to the destroyed documents, and should not bear the burden of doing so.

10. No significance attaches to the fact that the EEOC hearing examiner (and the EEOC Office of Review and Appeals) framed the dispute solely in terms of the allegedly discriminatory 1979 termination of Prince by the INS. The *de novo* review which this Court must conduct under *Chandler v. Roudebush, supra*, would be the same whether the EEOC examiner (a) improperly framed the dispute, (b) properly framed the controversy but improperly admitted or considered (or failed to admit or consider) certain evidence during the hearing, or (c) reached a decision which arguably failed to conform to the evidence that had been properly placed upon the record.

11. *See* Vacancy Announcements, January 26, 1970, January 14, 1972, and July 22, 1975, Plaintiff's Exhibits A, C, and I.

Prince testified that she applied and was rejected for other positions as well, but she demonstrated no personal knowledge of the race, sex or gender of the persons who were selected for

the positions other than those individuals whose names were documented in Plaintiff's Exhibits A–F, I, J and M.

12. Although the record reflects some ratings (in such categories as "relationships with others" and "adaptability") which were noted as "good" or "fair," Prince was either "recommended" or "highly recommended" for promotion each time she applied between 1970 and 1978.

13. *See* United States General Services Administration (GSA), General Records Schedule 1, Federal Property Management Regulations, 41 C.F.R. 101–11.4 (1987).

Even at the administrative level, the INS appears to have asserted no other defense to Prince's continuing discrimination claim. However, the formal EEOC proceeding on Prince's charge limited the scope of the controversy in a manner which could reasonably have been construed to obviate the need for any defense to pre–1978 allegations. *See* discussion *supra*.

This Court must reject the INS' argument for several reasons. First, the INS never presented any facts in support of its claim that (a) the destroyed documents were essential to its defense, or (b) neither live testimony nor alternative documentary evidence was available as substitute proof against Prince's claims of pre–1978 discrimination. It is axiomatic that the weakness of a defense is no ground upon which to relieve a party of its duty to assert that defense or risk the waiver thereof.

Second, the compensation provision of section 706(g) of Title VII, 42 U.S.C. § 2000e–5(g), which limits an award of back pay to two years prior to the filing of an administrative complaint, does not apply to claims for reinstatement or other relief, Thus, if the INS' personnel records defense was creditable, the mere drafting of document destruction regulations could insulate the Government from claims by its employees that they had suffered discrimination at any time for which records were no longer required to be preserved. Such a result would subject Title VII enforcement in the public sector to the whim of the Government, and utterly vitiate the protections of the statute for federal workers.

Third, this Court has rejected the INS' official records argument on more than one occasion. In its Order, which denied the INS' motion for summary judgment on July 18, 1986, the Court concluded that a genuine factual issue existed as to Prince's continuing discrimination claims despite the INS' defense of the unavailability of documents.[14] Likewise, at least once during the protracted discovery process in this case, this Court declined to rule that evidence in support of Prince's otherwise viable continuing discrimination claim was irrelevant and non-discoverable merely because the INS had destroyed documents by which it might have refuted that claim.[15]

Thus, the INS has been on notice from 1984 that this Court would require more than the *ipse dixit* assertion of the unavailability of certain documents as a defense to Prince's continuing discrimination claim.[16]

### B

A claim of continuing discrimination, like any element of a plaintiff's case under Title VII, may be proven by a mere preponderance of the credible evidence of record. Thus, continuing discrimination may be found to have occurred despite evidence that an employer had hired a candidate of the plaintiff's race, sex and/or age during the period of alleged discrimination as long as the requisite pattern of the other acts of discrimination by the employer has been established.

Similarly, Prince's claim of continuing discrimination does not fail merely because there is evidence that the persons who were hired in her place are members of one or two, but not all three, protected groups (i.e., blacks, females, and persons over 40 years of age) of which she was a member. Thus, it cannot be said that the hiring of one or more employees from a protected group whose members complain of disparate treatment absolves the employer of liability for continuing discrimination against a member of that group who was not hired.

Moreover, courts have held that black females are a protected class for Title VII purposes. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1416 & n. 2 (10th Cir.1987); *Jefferies v. Harris County Community Action Ass'n,* 615 F.2d 1025, 1032 (5th Cir.1980); *Graham v. Bendix Corp.,* 585 F.Supp. 1036, 1047 (N.D.Ind.1984); *contra, Degraffenreid v. General Motors Corp.,* 413 F.Supp. 142 (E.D.Mo.1976), *aff'd in part, rev'd in part on other grounds,* 558 F.2d 480 (8th Cir.1977) (black females not a special class under Title VII).

This Court declines to credit the INS' argument that, in order to avoid liabil-

---

**14.** *See* Order of July 18, 1986, at 5–6.

**15.** *See* Order of July 16, 1984, at 4.

**16.** In view of the foregoing facts, the Court regards the Government's suggestion that it was unfair to allow a substantive "amend[ment] of the Complaint post-trial" to include the forced retirement issue, *see* Defendants' Motion to Reopen the Record, June 22, 1988, at 1, as disingenuous.

ity for discrimination against Prince between 1970 and 1978, it would have had to (a) promote Prince or (b) hire other black females older than Prince. *See EEOC v. Penton Industrial Publishing Co., Inc.,* 851 F.2d 835 (6th Cir.1988). Prince does not bear the burden in her *prima facie* case to show that she was the "best qualified" candidate for any of the positions in question, *Abrams v. Johnson,* 534 F.2d 1226 (6th Cir.1976); *Sklenar v. Detroit Board of Education,* 497 F.Supp. 1154 (E.D.Mich.1980). Rather, Prince bears the *prima facie* burden to establish that she applied, and was qualified, for certain positions, and was rejected although the employer continued to seek applicants with similar qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824.

■ At the trial, Prince presented evidence of (a) remarks and conduct by her supervisors which suggested a discriminatory animus toward her and other minority employees, and (b) a pronounced and sustained statistical imbalance in hiring by race and sex in the INS' Detroit Office between 1970 and 1978.[17]

Prince has demonstrated that she had been consistently rejected for all of the INS positions for which she applied until the agency's Detroit Office became the subject of an equal employment opportunity investigation. However, following the issuance of an affirmative action plan by that Office, she was hired to fill the first Immigration Inspector position which became vacant.

It is reasonable to infer from such evidence—standing alone—that it is more likely than not that the employer's actions were based on discriminatory criteria which are forbidden by Title VII. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802 & n. 13, 93 S.Ct. at 1824 & n. 13. The INS completely failed to rebut Prince's testimony that she (a) was as qualified a candidate for the position of Immigration Inspector Trainee as were the persons who had been selected in her stead between 1970 and 1978, and (b) suffered repeated discriminatory denials of promotion to that position during the years in question.[18]

For the foregoing reasons, this Court concludes that Prince has proven that she was the victim of a continuing course of discrimination, which began more than two years before she filed her EEOC complaint on November 9, 1979, by a preponderance of the evidence.

C

■ Title VII requires that an injured party "be placed as nearly as possible in the situation he would have occupied had the wrong not been committed." *Spears v. Pike County Board of Education,* 843 F.2d 882, 885 (6th Cir.1988), *citing Shore v. Federal Express Corp.,* 777 F.2d 1155, 1158–59 (6th Cir.1985); *Thompson v. Saw-*

---

17. Jimmie Booker, a former equal employment opportunity investigator for the INS, characterized the attitude of INS officials as one of "hostility" toward the EEO investigation which he was conducting. He also indicated that the Detroit office in particular had "resisted" compliance with the guidelines of an agency-ordered affirmative action plan.

Booker spoke of a conversation in his presence between Gordon Ruth, the administrator of the INS' Northern Region, and another INS official, Jack Keller, in Ruth's office in St. Paul, Minnesota, in 1980 or 1981, well after Prince's administrative complaint was filed. Booker stated that Ruth referred to Prince and two of her co-workers (three women who, according to Booker, had complained of discrimination in the INS Detroit office) as "those three black

bitches." Booker also testified that Ruth called the three women "the three musketeers." Trial Testimony of Jimmie Booker, June 14, 1988.

18. Naomi Shaw Solomon, one of the two witnesses who were called by the INS at trial, testified that she, a black female, was a co-worker of Prince and personally experienced no discriminatory treatment in the INS Detroit office. However, in view of the trial testimony of Prince, Jimmie Booker, and the voluminous documentary evidence of disparate treatment which Prince experienced prior to her reinstatement, *see, e.g.,* Memorandum from Jimmie Booker to Gordon A. Ruth, February 17, 1981 (Plaintiff's Exhibit AA), at 5, the INS testimony did not persuade this Court that no discrimination had been visited upon Prince.

*yer*, 678 F.2d at 291. Therefore, the INS shall compute and pay to Prince the difference between (a) the pay and benefits that she received as a result of the final EEOC decision in this case and (b) the pay and benefits that Prince would have received between November 9, 1977, and January 7, 1984 if she had been made an Immigration Inspector on November 9, 1977 and had held that position continuously until January 7, 1984.[19]

### III

### A

Following an order by the EEOC on August 31, 1983, Prince was reinstated to her Immigration Inspector position as of November 15, 1983, with back pay for the period of her discharge. However, on January 7, 1984, she filed a Request for Personnel Action, in which she stated:

I, Blanche Prince, hereby submit my retirement under notice of duress as a result of the following set of circumstances: I was promoted to the Grade of GS 9/3 with the job title of an Immigration Inspector, on November 15, 1983 following a decision from the Office of Review and Appeals of the Equal Employment Opportunity Commission which decision was dated August 31, 1983. The decision and the promotion were the result of the Equal Employment Opportunity Commission having found that I had previously been discriminated against when I was terminated from the Immigration Inspector Trainee Program in 1979.

In December of 1983, I was ordered to undergo retraining as an Immigration Inspector trainee at Glyncoe, Georgia. The training was to commence on January 4, 1984, but since has been rescheduled for February 15, 1984. I previously completed a standard course at the IOBTC Academy at Glyncoe, Georgia in the Spring of 1979 where I successfully completed all courses of study except Spanish.

It would be a personal hardship for me to attend the Academy at Georgia in February 1984 because I have responsibility for the care of my mentally impaired sister and my elderly father who is not well.

Rather than undergo a repetition of a course of training that I have already had which would entail great personal hardship to me, I have elected to submit my retirement. I feel that the retirement is under duress.[20]

The question before this Court is whether Prince suffered compensable discrimination in connection with what she described as her "forced retirement."[21]

At the threshold, this Court is presented with a problem of characterization. Prince contends that her "forced retirement" claim is one of retaliation for exhaustion purposes under *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir.1981).[22] She also argues that

---

19. The INS is directed to compute any overtime payments to Prince by reference to an average of the overtime hours worked by all Immigration Inspectors for the period in question.

 However, any retroactive compensation for grade and pay increases shall not assume that Prince would have received a promotion to Immigration Examiner. Prince has failed to establish that such a promotion would necessarily have ensued but for the discrimination that she suffered.

20. Request for Personnel Action, January 7, 1984, Plaintiff's Exhibit P.

21. Prince's "forced retirement" claim is properly before the Court, having been included within the scope of her amended Complaint in 1985. *See* First Amended and Supplemental Complaint, July 2, 1985; Order of June 21, 1988, at 3.

22. Transcript of Proceedings, Hearing on Motion for Preliminary Injunction, December 28, 1983 (Injunction Hearing Tr.), at 61.

 Administrative remedies need not be exhausted where the claim is one of (a) retaliation for the exercise of protected rights, *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981), or (b) an act which was "like or reasonably related" to previous instances of alleged discrimination. *Anderson v. Block*, 807 F.2d 145 (8th Cir.1986). In either case, proof of the new acts may be considered by the Court even if they were not identified in the EEOC charge. The "like or reasonably related" formulation of *Anderson v. Block* and *Ong v. Cleland*, 642 F.2d 316, 318 (9th Cir.1981), has been understood as a corollary to the "continuing discrimination" concept, i.e., the notion that "once the agency has tried to achieve a consensual resolution of the complaint, and the discrimination continues, there is minimal likelihood that further

"there has been, in effect, continuing discrimination and that [the requirement of a return to the Academy] is an attempt to undermine the [R]einstatement [O]rder."[23] For purposes of this Opinion, it will be assumed that Prince has validly alleged retaliation and "continuing discrimination" in connection with her claim of "forced retirement." *See O'Malley v. GTE Service Corp.*, 758 F.2d 818, 821 (2d Cir.1985) (a continuing violation claim must be clearly asserted in the Complaint). Further, although she did not explicitly denominate her "forced retirement" allegation as a claim of constructive discharge, the Court construes it as such. *See Geisler v. Folsom*, 735 F.2d 991, 996 (6th Cir.1984); *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir.1980).

**B**

██ Prince claims that the decision by the INS to require her to return to the Academy was a violation of the August 31, 1983 EEOC Order of Reinstatement. While at least some weight may be given to the results of administrative factfinding in the context of a civil action under Title VII, *see Fed.R.Evid.* 803(8)(C); *McKenna v. Weinberger*, 729 F.2d 783, 792 (D.C.Cir. 1984); *Hackley v. Roudebush*, 520 F.2d 108, 155–58 (D.C.Cir.1975), it must be recognized that section 717 provides for *de novo* proceedings in the district court as the exclusive judicial remedy for discrimination claims brought by federal employees. 42 U.S.C. § 2000e–16(c); *Chandler v. Roudebush*, 425 U.S. 840, 863–64 & n. 39,

96 S.Ct. 1949, 1960–61 & n. 39, 48 L.Ed.2d 416 (1976); *Brown v. General Services Administration*, 425 U.S. 820, 832, 835, 96 S.Ct. 1961, 1967, 1969, 48 L.Ed.2d 402 (1976). Thus, Prince's claim that the INS failed to observe the terms of the EEOC Reinstatement Order must be evaluated under the same standard of proof as that which applies to any claim of discrimination under section 717.

██ After an examination of the August 31, 1983 Order of Reinstatement, this Court determines that the EEOC Order did not forbid the INS to require Prince to undergo any further training at the Academy upon her reinstatement. The Order merely required that she be given "proper pre- and post-Academy training" in connection with her reinstatement. Moreover, even though the EEOC asked the INS to reconsider whether Spanish should be a required Academy course for "northern border" Immigration Inspector Trainees, the Order of Reinstatement did not suggest that (a) the INS method of computing a passing score for the Academy course as a whole was *per se* discriminatory or applied to Prince in a discriminatory fashion, or (b) Spanish language schooling was the only additional training that the INS could properly require Prince to repeat.[24]

The import of Prince's testimony at trial was that she did not believe that the INS intended to provide her with "pre-Academy training," as required by the Order of Reinstatement. However, Prince put forward

---

**23.** Injunction Hearing Tr. at 57.

**24.** Prince claims an entitlement to relief based upon a "forced retirement" from her position, rather than a violation of the Order of Reinstatement. Evidence of a direct violation of a reinstatement order that had been issued by the EEOC may constitute some evidence of unlawful discrimination.

However, assuming that Prince has validly alleged a failure by the INS to provide local pre-Academy retraining (or to promise to provide it) at any time prior to the submission of her retirement application, she has failed to establish the existence of a discriminatory animus with regard to such retraining. *See* discussion *infra.*

conciliation [by the EEOC] will succeed." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984). "To force a plaintiff to file a new administrative charge with each continuing incident of discrimination would create needless procedural barriers." *Anderson v. Block*, 807 F.2d at 148, citing *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973).

However, regardless of whether Prince's allegation of "forced retirement" is characterized as a retaliation claim under *Gupta v. East Texas State University, supra,* or a "related" discrimination claim under *Anderson v. Block, supra,* the claim is subject to the same standard of proof as is any claim of unlawful discrimination. *See* discussion *infra.*

no evidence as to her employer's intentions beyond her own subjective beliefs, the evidentiary value of which has been discussed *supra.*

Further, it is uncontested that Prince applied for retirement on January 7, 1984, although she would not have been required to report to the Academy until February 15, 1984. As a result, the Court cannot determine that no training, or insufficient training, would have been provided to Prince between the date of her application for retirement and the time for her re-quired re-enrollment in the Academy course. Therefore, on the basis of the record, it is impossible to conclude that the INS acted in violation of the EEOC Order of Reinstatement as claimed by Prince.

#### C

In *McKenna v. Weinberger, supra,* the Court stated the *prima facie* burden of production for retaliation claims as follows:

> The *McDonnell Douglas* framework is ... applicable to claims of retaliatory dismissal. In order to establish a *prima facie* case of retaliation, a plaintiff must show: 1) that she engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two.

In its assessment of the *prima facie* case before it, the *McKenna* Court found the timing of the adverse personnel action relative to the plaintiff's complaints of discrimination to be of prime importance. *Id.* at 791.

In the instant case, the element of proximate timing is likewise present. It is undisputed that (a) the INS did not notify Prince of its response to the August 31, 1983 EEOC Order of Reinstatement until November 14, 1983, (b) on November 15, 1983, it transmitted a notice of reinstatement to Prince which ordered her to report for duty one day earlier (November 14, 1983),[25] and (c) its Detroit office made the decision to return her to the Academy within weeks following the date upon which she had reported for duty.[26]

■■■■ This Court is not convinced that Prince has met her *prima facie* burden with respect to her "forced retirement" allegation. She did not prove at the preliminary injunction hearing or at trial that the INS decision to enroll her in the Academy course for a second time represented disparate treatment.[27] However, assuming *arguendo* that Prince has made out a *prima facie* case that her "forced retirement" was (1) retaliatory, *see McKenna v. Weinberger,* 729 F.2d at 790–91, or (2) "like or reasonably related" to prior acts of discrimination, *see Anderson v. Block,* 807 F.2d 145 at 148, 150–51 (8th Cir.1986), she can prevail on the merits of such a claim only if it can be shown that the INS decision to require her to return to the Academy was the result of a discriminatory or retaliatory intent on the part of the agency. Such a motivation has not been demonstrated by means of any objective proof.[28]

■■■ A Title VII plaintiff may show unlawful discrimination through circumstantial evidence. *Spears v. Pike County Board of Education,* 843 F.2d 882, 884–85 (6th Cir.1988), *citing Blalock v. Metals Trades, Inc.,* 775 F.2d 703, 706–07 (6th Cir.1985).

> If a plaintiff attempts to show unlawful discrimination through circumstantial evidence only, and the defendant introduces evidence of a legitimate non-discriminatory reason for its adverse employment decision, the plaintiff may prevail if the finder of fact is persuaded that the proffered reason is not worthy of belief or that unlawful discrimination was more likely the reason for the decision.

**25.** Testimony of Blanche N. Prince, Injunction Hearing Tr. at 67.

**26.** Testimony of Blanche N. Prince, Injunction Hearing Tr. at 69.

**27.** *See* discussion *infra.*

**28.** Prince was asked during cross-examination at trial for her opinion whether the INS' decision to return her to the Academy was made in retaliation for her EEO complaint and/or federal civil action. Prince did not respond definitively, but suggested that she did not believe that the agency had a retaliatory motive. Trial Testimony of Blanche N. Prince, June 14, 1988.

*Id.* at 885, *citing Sims v. Cleland,* 813 F.2d 790, 792 (6th Cir.1987). Factual findings by the district court under *Fed.R.Civ.P.* 52(a) concerning the presence or absence of discriminatory intent may be reversed only if clearly erroneous. *Id., citing Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Geisler v. Folsom,* 735 F.2d 991, 995 (6th Cir.1984), citing *Pullman–Standard Co. v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982) (Rule 52(a) makes no distinction between "ultimate" and "subsidiary" facts).

The timing of Prince's reinstatement and the decision to return her to the Academy has been discussed *supra.* However, the only testimony that was presented on the motivation question by Prince was that she subjectively feared that the INS had placed insuperable demands upon her in order to justify a second discriminatory discharge from employment.[29] Such beliefs are of relatively little use as proof of actual discrimination. In *Mitroff v. Xomox Corp.,* 797 F.2d 271 (6th Cir.1986), the Court stated:

> Although testimony which embraces an ultimate issue is not objectionable [under] Fed.R.Evid. 704, seldom will ... a lay opinion on an ultimate issue ... meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an "oath helper."

*Id.* at 276.

At the December 1983 hearing on a motion for a preliminary injunction, Prince conceded that she had "been out five years, practically."[30] The INS offered testimony that (a) its Detroit office was unable to provide Prince with the training that she needed after such a hiatus, and (b) the only appropriate remedial measure for an employee in Prince's situation was to transfer her to the Academy for training.[31] Such testimony by the agency constitutes the articulation of a "legitimate, non-discriminatory reason" for the employer's action. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green, supra.*

In response to the INS proffer of an apparently non-discriminatory reason for its decision to send her to the Academy in 1984, Prince must adduce proof that the employer's reason was a mere pretext for unlawful discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824. However, Prince's only testimony was that she disagreed with the INS decision to re-enroll her in the Academy because she believed that "the information I need is here, on-the-job training at the border. Going back to school is not going to tell me what I need right now."[32]

There was no testimony offered by Prince that the retraining regime by the Academy of Immigration Inspector Trainees who had recently returned from extended absences (e.g., the administration of

---

**29.** Injunction Hearing Tr. at 63–64. *But see* n. 28 *supra.*

**30.** Testimony of Blanche N. Prince, Injunction Hearing Tr. at 63.

**31.** Testimony of Thomas W. Pritchard, Jr., Injunction Hearing Tr. at 30, 34–38.

**32.** At the preliminary injunction hearing and at trial, Prince introduced evidence that other INS personnel at the Port of Detroit had failed Spanish at the Academy but had been retained. However, with one exception, none of these persons had been given a grade in Spanish which placed their cumulative score below passing for the Academy course as a whole. The

"exception" was Sherman Levy, whose eventual transfer to a different federal agency was well documented upon the record. This Court does not believe that Prince and Levy were treated so differently as to give rise to an inference that Prince suffered discrimination based on her poor performance at the Academy in 1979.

On the question of the fairness of selective retraining of federal employees as affirmative action, *cf. Powers v. Dole,* 782 F.2d 689 (7th Cir. 1986) (agency recycled female and minority employees through training course to prevent the appearance of discrimination, but a white male employee who was not given a second training opportunity had no cause to contest his termination for inadequate completion of first course).

unannounced tests) was unusual or without any reasonable relationship to a realistic evaluation of their suitability for employment. Clearly, there was no evidence produced during the trial that this retraining program at the Academy was discriminatory in intention. The only evidence from Prince on this issue was that (a) the INS had give her no advance notice of the date of her return to duty in November 1983, and (b) her superiors at the INS Detroit office had given her minimal local training prior to the December 1983 decision to send her to the Academy for a second time.[33]

In essence, Prince contends that the INS discriminated against her on the basis of race, sex and/or age when she was not extended special treatment in accordance with (1) her belief that she required local on-the-job training, but not the training which was to be administered at the Academy, and (2) her request not to be transferred to a distant location for reasons of personal hardship. After a thorough review of the evidence of record, this Court cannot accept Prince's contention that the INS' decision on this issue amounted to unlawful discrimination.

### D

■ The circumstances of Prince's retirement only amount to a constructive discharge if she can demonstrate that her working conditions were objectively "intolerable." *Geisler v. Folsom*, 735 F.2d 991, 995 (6th Cir.1984); *Clark v. Marsh*, 665 F.2d 1168, 1173–74 (D.C.Cir.1981); *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir.1981); *Lake v. Baker*, 662 F.Supp. 392, 404 (D.D.C.1987). Proof of intolerability, in turn, requires (1) a showing of more than one actionable instance of discrimination, and (2) "aggravating factors" such as continuous and pervasive discriminatory treatment spanning a substantial period of time. *Clark v.*

*Marsh, supra; Lake v. Baker, supra; Downey v. Isaac*, 622 F.Supp. 1125, 1132 (D.D.C.1985).

■ In the present case, one component of the required showing might be established upon an inference that the decision to require Prince to return to the Academy was based upon a discriminatory motive. However, as discussed *supra*, this Court does not believe that a sufficient evidentiary basis has been provided upon which to conclude that the INS acted out of racial or other discriminatory animus. No evidence was presented as to whether a reasonable person in Prince's circumstances would find it "intolerable" to be required to undergo retraining before assuming the duties of a reinstated employee.

### IV

For the reasons which have been stated in this Opinion, the Court concludes that Prince has failed to prove by a preponderance of the evidence that she suffered unlawful discrimination by reason of her race, sex and/or age when she was required to return to the Academy as a condition of continued employment as an Immigration Inspector following her reinstatement to that position after an absence of more than four years.

Accordingly, no relief is ordered upon Prince's claim of "forced retirement."

IT IS SO ORDERED.

---

**33.** There is no evidence in the record that Prince's supervisors at the INS were aware or believed that she would retire if her only alternative was to return to the Academy. Indeed, Prince admitted at trial that her supervisors had postponed the commencement date of her required retraining from January to February 1984 after they were apprised of her family circumstances in December 1983. Trial Testimony of Blanche N. Prince, June 15, 1988. Thus, a claim of coercion cannot be sustained in connection with Prince's request for retirement on January 7, 1984.